Before we call you up here and we begin, Judge Bryson has a question about a citation to the appendix that he wants to get cleared up before we use up any more time. Mr. Mueller, I guess this pertains to your materials. At pages 17 and 57 of your brief you cite an excerpt from the inventor's discussion of the nature of the invention and you cite to pages 2410 and 2411. The first part of that quoted material does appear to be on 2410, but I couldn't find the second part starting, if you look at page 17, starting at line 10, the parameters required in MS down to line 15. I couldn't find it on 2410 or 2411, so I thought maybe there was a page like that. Maybe it's in your appendix, but not in mine. Do you have access to your appendix to be able to tell me whether that's in your appendix? See, 2411 has almost nothing on it. 2410 has the beginning material that you've quoted from lines, about line 7 through line 10, but not the rest. I'm assuming there's a page missing. I'm not sure right now. We're looking right now. Well, I tell you what, maybe if you could provide us with that, since it's quoted in such detail, I assume it exists. That would be very helpful. Thank you. Okay. Mr. Padmanabhan? Padmanabhan. Is that right? Yep, very close. Okay, very close. That's very nice of you. I try really hard. I had a lot of jurors whose names I had to call out, and it was always difficult. But you want three minutes for rebuttal? Yeah, that's fine, Your Honor. Okay. You may begin. Thank you, Your Honor. May it please the Court. Your Honors, there are two points I will address. First, the district court impermissibly applied a new claim construction in evaluating Core Wireless's JMOL motion. And second, in denying Core Wireless's JMOL motion… Did the judge give any improper jury instruction? No, Your Honor. Okay. Then isn't the district court judge's review properly limited to whether substantial evidence offered at trial, including the statements by Apple's experts, could support the jury's finding? That's true, Your Honor. But in the sole basis upon which the judge denied Core Wireless's JMOL motion was based on a reading of the claim language means for comparing to require channel selection. And that is not a claim construction that was there prior to the trial. So at trial, the claim construction that was tried was one where, for means for comparing, there was no channel selection required at the phone. What about the inclusion, though, of columns 6, lines 20 through 39, and column 7, lines 17 through 20? I mean, the district court expressly excluded those lines in the claim construction, right? They are included in the claim construction, but if you look at the claim construction record from down below, Apple made two very explicit attempts to read into the claim language for the structure of this claim term, channel selection at the mobile phone. Apple first did it when it asked the district court to have language that suggested that the result of the comparison would go to a channel selection function at the mobile phone, and probably even more telling, Apple specifically then asked the district court judge to put in box 660 from figure 6, which is the algorithm performed by the control unit, and that box 660 specifically calls for channel selection. And the district court refused Apple's attempt to do that and effectively rejected it. So Apple never argued down below either lines 17 to 20 from column 7 or the lines from lines 20 to 39 in column 6 required channel selection, and that language there does not require channel selection. Well, tell me why that's so, because, I mean, Apple asked for these phrases, these lines to be included, and they do relate to the figure that seems to show channel selection. And, Your Honor, when you look at the figure itself, box 660 is the specific figure, a box that requires channel selection. If you look at the claim language itself, the function that everybody's agreed upon does not require channel selection, and that's why the district court judge kept out box 660 from the claim construction. And in that context, reading the language in column 7 or in column 6 would not suggest to anybody that there was going to be channel selection at the handset. Apple expressly made those arguments and lost in that context to try to now suggest that the language in column 7 or in column 6 would now require channel selection as part of the structure would be wrong and it would be an incorrect construction. Let me see if, just a factual question, in the reference on column 6, the lines, oh, it's about line 24 through 26, the references to the RLC layer, to the MAC layer, those are all both in the mobile station in this context, correct? Yes, Your Honor. Right. So all of that portion between 20 and 36 are all referencing things that happen in the mobile station. Yes, Your Honor. And then one other question. When you get over to column 7 at lines 40 through 42, there's a fairly explicit statement, quite explicit actually, that the channel selection, channel is selected by the mobile station. And that's not, as I read that portion of the specification, that isn't talking about a particular embodiment. It seems to be talking about the invention as a whole. And why isn't that very helpful in telling us that this mobile station has to do the channel selection? And Your Honor, the reason, one reason that none of those statements would apply and make this part of the structure for the means for comparing is fundamentally the function that both parties agreed to does not require channel selection. The function simply gets as far as saying you have to make this comparison as a basis for channel selection. Yeah, but that's the function. I mean, but the means is through the mobile station. And the means is, but the means only has to go as far as saying you have to have the structure that actually does that comparison as a basis for channel selection, not that channel selection actually has to be done. Claim 18 specifically has the function, make the channel selection. So any structure that would be required for channel selection would be with Claim 18 cannot be in the structure for Claim 17 because the only structure that would be required would be the structure for making the comparison and it's as a basis for channel selection. So I suppose Claim 18 can be explained on the ground that Claim 17 doesn't require that the selection be done solely on the basis of the comparison. There can be other factors, but Claim 17 allows other factors, Claim 17 allows other factors to be present but not Claim 18. So that wouldn't, that wouldn't tell us that the mobile station is not doing the channel selection. But the plain language of Claim 17 and in particular the comparison stuff that we're talking about, the only structure required there is to take the parameters and make that comparison. It doesn't say anything more about what has to be done with that comparison. It's just that that comparison is done as a basis for channel selection. It never says then a channel must be selected. But that's why Judge Bryce's question is directly on point, which is that it, that's the differentiation between Claim 17 and Claim 18 is Claim 18 is saying you use that information to make the comparison. Claim 18 is saying now make the channel selection itself. So the structure in Claim 17 can't be, it cannot incorporate structure that makes the channel selection. In other words... Is there a single embodiment, a figure or an embodiment described in the written description that shows the channel selection being made anywhere other than the mobile station? There's not a specific embodiment, but the spec itself suggests a request being made. And the advantages of the invention as described can be gained simply by making that comparison and reducing the congestion. So the invention itself... But it doesn't say that anywhere, does it? Yes, the invention... It doesn't say, well, you could do this at the base station. It doesn't even say that. It doesn't specifically, but it implies because you can send the request back to the network, you can then have the decision be made at the network. Even Apple agrees that channel selection is simply making that request. And if you're making the request, one skilled would understand that the decision itself could be made at the network. But more importantly, the claim language itself, because it's just comparison, it's improper to read the structure to go beyond just comparing and to actually require channel selection. I mean, fundamentally, that's true. And in the Wenger case, where you look at a claim, where you have the independent claim and a dependent claim, and the dependent claim has a separate function, there's actually a presumption that it is different. And in this case, the selection, the very structure we're talking about for performing channel selection would be done in Claim 18, not in Claim 17. In Claim 17, the language is very precise to say you make the comparison, there's a reason you make the comparison, but that's the only structure then that's required. What do you say about the – and here I turn to the material that I was discussing with Mr. Mueller on page 17 of his brief in which the inventor is describing the invention. And it says that the MAC layer of the mobile device makes the decision between common and dedicated channel by using the information received. Isn't that a description, in the inventor's own words, of a system in which the mobile station is making that decision? Your Honor, there could be an embodiment where the mobile station is making the decision. Are you saying that's just all he's describing is an embodiment? That's not the language that's used. The language is more comprehensive than that. It seems to be describing the invention. I don't think so, Your Honor, because the invention itself, there's an advantage gained simply by performing the steps of Claim 17 and having a value now sent down to the phone so the mobile station can know when to even request a dedicated channel. That alone addresses the congestion issue. Yes, you can also then use it to go one step further and make the channel selection. But there's no reason to have the channel selection be made. The inventor's statements – in this case, there's no ambiguity as to what the claims say. No one's argued that. So the inventor's statements would be extrinsic evidence. But it is a means plus function claim. And I guess what I'm having a hard time understanding is if you concede to me that there's nothing in the written description that mentions any of this activity occurring at the base station, isn't that the end of the inquiry? You were limited to the precise function – the precise means described in the specification. And yes, Your Honor, we are. But the means that we're talking about here that apply to this claim language is just the means for comparing. We can't conflate means for comparing with means for channel selection. Well, but then it seems to me you're assuming – in a sense, assuming your conclusion because you say that means for comparing for basis of channel selection does not include channel selection. Their argument is that it does include channel selection. And the natural understanding of means for comparing for basis of channel selection in a sense conflates the comparing and the selection in the same entity. And that if you – if we agree with that, then your argument that all that's involved is comparison fails, right? No, I don't think so, Your Honor. Well, it would be if you agreed with that. And the main difference is they made this argument in – during claim construction and lost. So the district court, when they actually had the language that would require this structure to be including channel selection, and the box 660 is the best example of that is it's explicit. That's the algorithm. Even the judge says that's the algorithm, and those are the boxes that are going to be run by the control unit. The judge during claim construction stopped short and does not accept Apple's invitation to include box 660. So once you stop – The judge did exactly what you asked. And that's exactly what we asked. We only wanted box 650. And so the judge was very precise in saying that the structure only goes to 650, not 660. Then they've lost on the very point that we're all talking about. And then now to come back and say, yep, we've tried the case thinking that's what happened, and to justify it based on inclusion of column 7, line 17 to 20 is improper. In that context of that entire argument and entire record, it would be – No, he's not wrong when the opinion says core wireless proposing for the claim construction control unit 803 described in 717 to 20 of the 143s. No, he's not wrong. That was part of it. Core wireless also agreed with that citation, column 7, line 17 to 20. But if you look at that citation and the advantageously language, there is no structure that – that sentence actually doesn't apply to the compare limitation. It actually is because we were arguing over this for both compare and means for sending. I think that's the only reason they're in both spots. But really the main issue is when you – when the district court had this issue right in front of it, should we have structure for channel selection, the district court agreed with core wireless and said no. And now to justify the JMOL, they didn't have any evidence other than to argue that channel selection had to be done at the phone. To affirm that and deny JMOL, the judge then changed that construction. The judge simply changed it to say channel selection is now – has to be capable – handset has to have the capability of channel selection. And that is simply a shift from a basic argument that both parties head-to-head fought about. It's not just a sideshow. That was the actual argument that Apple lost on. And that's the basis on which the entire case was tried. You can look at the trial record. So Apple tried the whole case on the theory that the mobile station did have to have that capacity. And it was – there was no point that I could see that you said, wait a minute, none of this evidence is pertinent because it's contrary to the Clingman show. Actually, we say it repeatedly, Your Honor. You said it at the Rule 50 point. You said that the evidence isn't sufficient, but I didn't see you standing up when their expert, Dr. Stark, went on and on about why it is that the mobile station here is required to be able to have this capacity and Apple doesn't. And, Your Honor, I believe we actually do say to the court a few times that it's not relevant evidence. We told the jury it's not relevant evidence because – Where did you tell the court? Other than the Rule 50, which I saw. But that was all you cited. Okay. And then – but we also told the jury specifically why it was not relevant. And the entire basis for this argument is what exactly happened at the claim construction. I mean, there's no other explanation for the judge not adopting 660 because if the judge believed that structure was required, he would have put in box 660 into the construction. Because that is the only structure. That's a very explicit inclusion to say channel selection must be done at the handset. Well, wait. 660, though, I mean, his whole point was that channel selection doesn't have to actually be done. It just has to be capable of being done. So he didn't put 660 in because he didn't want to require the fact of channel selection. But to have the structure, to be able to be capable of doing channel selection, you have to have the structure that does channel selection. Otherwise, there would be no capability. So that's too fine a distinction in my view. You'd have to say either the structure is there to do channel selection or not. And what the judge did when he didn't include box 660 is made absolutely clear. That structure is not present and doesn't need to be present for means for comparing. Thank you, Your Honor. Okay. I'm sorry. You're way past your time. I'd let you go over. So I'm going to give an extra three minutes to you, and we'll give you three minutes for your vote. Thank you, Your Honor. Sorry about that. May I proceed? Yes. May it please the Court, my name is Joe Mueller. With my partner, Chip O'Neill, I represent Apple. If I might start with Judge Bryson's question on the invention disclosure record. And we're trying to find the page for the second portion of the parenthetical. If it's missing, we'll work with counsel to submit that missing page. But there is a portion of the joint appendix that speaks to a related issue. And the issue being what was actually conceived of by the inventor, Mr. Bialin. There's the invention disclosure record, which is at least in part in the joint appendix. There's also the proposal that he made contemporaneous with the invention disclosure record to the European Telecommunications Standards Institute. And this is joint appendix starting at page 2766. And I believe this addresses in part your question, Judge Bryson. On the first page of that submission to the European Telecommunications Standards Institute, there's a description of the current way that the cellular standard at issue operated at that time. And it describes how measurement reports were sent to the network. And in the words of Nokia and Mr. Bialin, the network can allocate capacity to the user equipment for uplink packet data transfer based on this report. But then it goes on to propose a change. And the change that's proposed by Nokia, by Mr. Bialin, was that the user equipment itself should be able to make the decision whether to send data packets on the RACH, which is a common channel, or whether to request a DCH or dedicated channel. And this is, again, joint appendix page 2766. The idea was for the cell phone, the user equipment, to make this decision. And that's carried through in the specification. It's carried through in the language of Claim 17. It's carried through in the only structure disclosed in the patent. Well, how do you explain the fact that the magistrate judge specifically left out 660 from the construction, from the structure that you proposed? And I'll explain it in the following way. We proposed at Markman multiple ways of expressing the same idea. Box 660 is one reference to that idea. Column 6, lines 20 through 39, are another way of describing that same idea. Column 7, lines 17 through 20, are yet another way of expressing the same idea. So we essentially expressed to the judge multiple ways of capturing this concept of the interwoven nature of channel selection with the language of the claim. Column 6, lines 20 through 39, refer to what is happening in Box 660. And you can see that from the context. If you look at column 6. Oddly, it doesn't have the interim numbers between 40 and 80. That's exactly right, Your Honor. But you're saying that that has to be what it's talking about? That's exactly right. I was about to make the same point, that if you look at the paragraph just prior, it refers to Box 640. And then the later one, 680. That's exactly right. And so those intermediate paragraphs are referring to what happens in 650 and 660. It refers to the channel selection process. And this paragraph is all about the mobile station. That's exactly right. I think we established that. That's correct. And not only did you establish that during your questions, but that's shown in Figure 2 of the patent, which is describing the prior art, but refers to the OSI model layers. Well, yes. But what struck me there is that the UTRAN seems to have the same MAC and RLC and RRC. So I was not completely confident that RLC and MAC referred just to the mobile station. That's correct. They're symmetrical, but it does show that the mobile has those layers in it. And when you read Column 6, it's clear that they're referring to the layers within the mobile. But Figure 2 doesn't definitively tell us that. No, but what it tells us is that the mobile has those layers. That's correct. That's right. And then Column 6 clarifies that the particular algorithm being used in this only disclosed structure involves the steps occurring in the mobile. So Column 6, Lines 20 through 39 gives us the particular ways in which this decision is made. Column 7, Lines 17 through 20 couldn't be clearer. It states explicitly that channel selection is advantageously performed in the control unit 803. Well, it could be clearer if it left the word advantageously out. So there's a couple points to make about that, Your Honor. First of all, this was not a litigated issue below the word advantageously. It seems to be the core of their case, really. It's an argument that's being made for the first time later. But under any reading of that term, the evidence in the record would not support infringement. If it means advantageously and always, there's no infringement because the mobile device does not make the decision. If it means advantageously and sometimes selects the channel, there's no infringement because the mobile device never makes the decision. And it could also mean advantageously occurs within the control unit 803. But it seems throughout to consistently refer to an affirmative property of the invention, however it's used. And that's the common thread. That's exactly right, Your Honor. And Judge O'Malley, you asked if there's any embodiment in the patent that deals with the network making this decision. Not only is there no embodiment describing that, the only reference to the network making any sort of decision is a criticism of that. And that's in column three, beginning at line 20, where it describes the consumption of resources required to have the network make that decision and how the purpose of the invention is to avoid that problem. So not only is there no embodiment disclosing a network side channel selection, the only suggestion or reference to that sort of operation is a critique of it. You know, there's a fourth possibility of the reading of advantageously, which you didn't refer to, which is that it's better if the mobile station can do it, but it isn't necessary. In which case, even if the mobile station can't do it at all, there's infringement. Well, Your Honor, a couple things. One is, of course, this is a means plus function claim, and that sentence was referred to as part of the structure for the jury to consider in evaluating infringement. Your understanding or your theory of the case, then, I take it, is that when we say in the claim 17, means for comparing dot, dot, dot, for basis of channel selection, what that means is it encompasses both the comparison and the selection as necessary parts of the algorithm. Yes. That's the gist of your whole case, right? That's right, Your Honor. And there could be some theoretical distinction in the sense that there might be in the code somewhere a memorialization of the channel selection after the comparison is done. But what this claim explicitly requires is that the two be inextricably intertwined. But the other side reads that same language to say for the basis of channel selection, but not necessarily a selection done by the mobile. It can be done by the system. It's just this unfortunate use of passive voice gets us into leaving out the noun that we need to decide who's doing the selection. And that runs throughout the patent. But they say, well, that's an indication that the selection can be done wherever. So I'd say a couple points, Your Honor. The first is, of course, again, this is means plus function, and the only disclosed structure involves the mobile unit itself making the decision. But that depends on whether you're right in reading comparing for basis of selection to include the selection. Because if you're not right about that, then the means plus function structure only has to get you as far as comparison. It doesn't have to get you the selection. And we would say, Your Honor, it is appropriate to read it that way because those words need to be given meaning for basis of said channel selection. But moreover, there's no evidence in the record about what the network does with this measurement report, which was the accused functionality. And what was accused in this case, and having tried the case, I can tell you that our arguments from before trial, at trial, and after trial were exactly the same. There's no shift in argument at any point. What they accused was an event for a measurement report, which is a type of measurement report generated by the cell phone and sent to the network. That is precisely the type of report that was described in the prior art, including at page 2766, in which the change proposal was made to Etsy and the background was referring to these measurement reports. This same measurement report was used in the accused functionality. And what it does is it sends a measurement report to the network, which could either ignore it or do something with it, including by reliance on other factors as well. We don't know. And there was no evidence put on by the plaintiff as to what the network side operators do with that event for a measurement report. So to answer your question, Judge Bryson, to the extent that the theory is this event for a measurement report is always used for channel selection, there's a failure of proof. That theory was never proven to the jury at trial. And we think you'd be wrong anyway as a matter of claim construction in that, in fact, the construction that Judge Love ordered, Judge Davis adopted, and Judge Gilstrap applied, required explicitly through 620 through 39 and 717 through 20 that channel selection occur in the mobile unit. But even if that were wrong, and that the network could make this decision even though the patent's only discussion of that notion of the network deciding this is a criticism of it, there's no proof of what the network actually does with the event for a measurement report. So either we have a proper... There's a lot of discussion in the briefs about whether the judge had the authority to clarify its claim construction. But is that really even what occurred here? I mean, you've got a construction that sets out a specific structure, and I think this goes back to Judge Wallach's initial question. If the jury was charged with that construction and then the arguments were made about what that structure had to do, I don't know why there would be any need for clarification. We don't view the judges having clarified or changed the construction in any way. We argued at Markman for what I would describe as a belt-and-suspender approach to this notion of channel selection, and we asked the judge to adopt multiple ways of expressing the same idea. Box 660, the narrative that corresponds to Box 660, the judge did not adopt all of our references to that idea, but he did adopt two clear references to this notion of channel selection, 620-39 and 717-20. Both are clear. We argued that position to the jury. We took that position before trial in our submission of proposed findings of fact to the judge, and that is... I can find it right here. Well, I'll get to it in a moment. But we were clear before, during, and after trial that the intertwinement of channel selection into the required functionality of Claim 17 and the fact that the accused products do not do that was our defense, our basis for non-infringement. The judge, post-trial, pointed to precisely the same portions of the specification that Judge Love had adopted in his original Markman decision. Now, did he state explicitly in a sentence that was not included in Judge Love's order? He did, but he didn't change the construction. He was just articulating in words what the specification stated and what Judge Love had adopted in the Markman decision. There's no change. We had argued from the beginning to the end that there was an intertwinement in the claim of channel selection. Those words, either channel selection or selected channel, occur seven times in that claim. So the notion that we're sort of importing channel selection post-hoc is simply not true. Not channel selection, but channel selection by which instrument? That's the point on which there was some lack of, at least if not lack of clarity, at least lack of explicitness in the claim construction. Well, Your Honor, Claim 17 states, the claim itself refers to the construction. The first three words are a mobile station, and then it goes on to use the words channel selection or selected channel seven times. Now, you're right, Your Honor. It doesn't explicitly state verbatim that this mobile station selects the channel, but it's intertwined in every limitation in the claim. And there's not an indication in the claim or anywhere else in the specification that the network would be making that decision. What's your response to your friend on the other side who says that, no, if you read it that way, then Claim 18 is meaningless? There's two responses, Your Honor. The first is that as a matter of law under the Latham case and others, the doctrine of claim differentiation cannot overcome the statutory command to construe means plus function claims in accordance with the disclosed structures. And there's no structure in this patent in which the network makes the decision. So we couldn't use claim differentiation to expand the scope of the claims beyond the disclosed structure within the four corners of the specification. That's the first response. The second response, Judge Bryson, you asked the question, could that claim be construed more narrowly to refer to a particular type of channel selection decision in which that is the only parameter being used to make the decision? And it could. Can I notice, for example, that the Claim 17 refers to four basis of said channel selection and 18 refers to on the basis of the result of the comparison. Now, that may just be a typo, but to the extent that they're using slightly different language, it suggests that the first is one of many basis and the other is a specific basis that has to control the channel selection, i.e. the comparison. And I think you're correct, Your Honor, that there's a linguistic basis to read it more narrowly and in harmony with a broader reading of Claim 17. But again, whether it can be read more broadly or not is a linguistic matter. These are both means plus function claims, 17 and 18, and there is no structure in this patent in which the network is making the decision. If this patent is construed in accord with the only disclosed embodiment, with the purpose of the invention, with the critique of network side decision making, there's no factual dispute that in the Apple devices, the mobile station never makes this decision. Sometimes it never makes that decision, and that's clear both in the testimony of Dr. Stark. It's also clear from the Qualcomm engineer who worked on the code that's accused in this case. The actual accused functionality is located within the baseband chip in these products. The baseband chips were supplied by vendors at Jury Verdict. And there's a Jury Verdict after hearing this testimony from the Qualcomm engineers by videotape, as well as the live testimony of Dr. Stark and the other witnesses. And the context about what happened at Etsy where the proposal was submitted by Mr. Vialan, the inventor, and it is an uncontested fact that it was rejected by Etsy. Go ahead. Sure. Finish your point. We have a situation where the notion or the idea of Mr. Vialan was to migrate this decision from the network to the mobile. He proposed the idea to the European Telecommunications Standards Institute. They rejected the idea. The Qualcomm chips used the same approach that Etsy chose to use, the network side approach. The Qualcomm engineer described exactly how that works. And this is at joint appendix pages 1990 to 1992. And as the engineer made clear, and as Dr. Stark corroborated, the mobile device never makes this decision. I'm sorry, Your Honor, please. You can finish. I was just going to say that the claim, each of the limitations are interwoven with channel selection. And that notion is divorced from the source code within the baseband chips in the accused products. This strikes me as the kind of case, I guess, what is it? O2 micro type case in which there was, at minimum, a very different view that the two parties had of what the claim construction meant. And that became evident fairly early in the trial, it seemed to me, that you're taking a very different view of what the claim construction meant. That's the kind of situation in which we would expect somebody to say to the judge, we need a clarification. And that never happened. The closest anything came, it seemed to me, was at Rule 50 time. The core wireless said, we win on Rule 50. And the judge just denied the Rule 50. But I don't see any place, maybe there was, in which anybody said, whoa, stop the train. We're going down the wrong track here. Was there any place where an objection was made to Dr. Stark's testimony or Apple's presentation of a theory which would have been inadmissible as a theory under the plaintiff's reading of the claim construction? No. And there was no request for a refinement of the claim construction to elicit this particular distinction that ends up being so important to the outcome of the case? No. And there's two consequences. There's, I'd say, two reasons for that. One reason and one consequence. We understood the construction of the judge to require channel selection be part of this process as conducted by the mobile station. We understood that from the adoption of Column 6, Lines 20 through 39, and 7, Lines 17 through 20. And we repeatedly showed those portions of the judge's construction to the jury over and over again. And having been there, Your Honors, I can tell you, we literally put the Markman order on a screen in front of the jury over and over. Without objection? Without objection. There was never an objection at any point during my opening statement, during the examination of Dr. Stark, during the closing argument. Never a request for a clarification of the claim construction before it went to the jury. We had no ground to request a clarification because we understood it to be exactly what I'm telling you today. If they had thought that it were otherwise, that the reference of 17 through 20 and 6, 20 through 39, did not require mobile side channel selection, it was incumbent upon them to tell the judge that before the jury was sent to deliberate. That never happened. OK. Thank you. Thank you, Your Honors. Your Honor, I'm going to start with Claim 18 and Claim 17. Just in terms of that language, if you look at that language, the entire claim is about the mobile station. And the only thing required in Claim 17 is a means for comparing. Claim 18 says, specifically, means for making that selection. And that difference in those claims under your Wenger case has to be respected. And you can't read structure in for a comparison function that would include the selection function. And that's simply what Apple is doing. And the argument that they're making now, saying they had multiple attempts to try to get channel selection construed as part of the structure and means for comparing, will not be supported by the record. The two attempts that they make, and it's very clear in the papers, are the two that I discussed before. Well, why didn't you object and say, Judge, they're ignoring the claim construction? Your Honor, I apologize. I think the way I read the trial transcript is that it was irrelevant. And that's why the Rule 50 motion are up. But Rule 50 doesn't go to relevance. No, but I mean, that's why we talked about it and said this doesn't matter to the claim. You didn't talk about it until you got to Rule 50. And I think the trial counsel at the time made the decision on the ground that it was irrelevant. And that was the better way to approach it. But I really, all along, there's never One suspects in this situation, at least a reviewing court would suspect that the reason neither side raised a ruckus about the claim construction is that either side necessarily really wanted to get an answer to the question of exactly what the claim construction meant. Because you might not have gotten an answer you wanted. And they might not have gotten the answer they wanted. So everybody was content to go along with the language of the claim construction, which gave both sides room to argue. But then when Rule 50 came, I mean, the Jamal, you say, whoa, whoa, foul. But you didn't say foul earlier when they were predicating their whole case on a reading of the claim construction that was different from yours. Your Honor, when you read the claim construction record, and that's why I use Box 660, it cannot be clear what the judge is saying there, that they were not, he was not. So they were putting in admissible evidence. Why didn't you object? Your Honor, I mean, I think the trial counsel on the ground at the time felt that it was irrelevant. And he was going to just argue that it didn't matter to the judge and the jury. I think that's a decision he made. But it really is, if you look at the record, the point that they're making that column 6 and column 7 language, you can search the entire claim construction briefing. They've never made the argument. Apple never made the argument that column 6 and column 7 were another bite at the apple to try to get channel selection as structure for means for comparison. And your case law makes it very clear that in this context where you have a function as claim 18, you should respect that distinction and not read in the structure that would be for claim 18 into claim 17. And finally, the advantages for this invention, you would realize just by doing claim 17 without ever doing channel selection at the handset. Thank you. Thank you. All right, we'll move to the next case.